IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | Case No. 25-mj-2135 |
|---|---|
| v. | |
| KEVIN KREBS | |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
FOR A COMPLAINT AND ARREST WARRANT**

I, Robert M. Lythgoe, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a complaint and arrest warrant for KEVIN KREBS (KREBS) born on November 22, 1993, currently residing at the Chester County (Pennsylvania) Prison located at 501 S. Wawaset Road, West Chester, Pennsylvania (PA). KREBS formerly resided in the Eastern District of Pennsylvania.

2. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI). As such, I am an "investigative or law enforcement officer" within the meaning of Title 18. I am assigned to the Philadelphia division and have been employed as a Special Agent since January of 2006. I am currently assigned to the Newtown Square Resident Agency where I investigate various crimes, including crimes of violence.

3. The facts set forth in this affidavit come from my personal observations, my training and experience, information obtained from other agents, law enforcement personnel, witnesses, as well as my review of documents and records – to include open-source social media – related to this investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter

nor every fact known to me. Where I assert that an event took place on a particular date and/or at a particular time, I am asserting that it took place on or about the date and/or time asserted.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 26 U.S.C. § 5861(d), (f) and § 5871 (unlawful making and possessing of unregistered destructive devices) have been committed by KREBS, within the Eastern District of Pennsylvania.

## **RELEVANT STATUTES**

5. 26 U.S.C. § 5861(d) makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(f) makes it unlawful for any person "to make a firearm in violation of the provisions of this chapter." The term "firearm" is defined as including "a destructive device." 26 U.S.C. § 5845(a)(8). The term "destructive device" means:

> (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

26 U.S.C. 5845(f).

**PROBABLE CAUSE**

*Seizure of Destructive Devices from KREBS' Residence*

11. On June 14, 2025, a citizen reported observing KREBS placing what they believed to be handgun in his waist area and leaving his vehicle. A West Chester Police Lieutenant approached KREBS's vehicle and observed in plain view, an AR-15 style rifle on the floor of the rear seat. Law enforcement conducted a pedestrian stop of KREBS, who was asked if he had any identification, and KREBS responded that he did not. When KREBS was asked if he had any weapons on him, he hesitated, but when asked about an empty holster on his left hip, KREBS replied that he had a handgun in his waistband underneath another layer of clothing. A fully loaded Sig Sauer P320 handgun, with a round chambered, was concealed under KREBS's raincoat. In addition to the fully loaded pistol, the following items were found on KREBS's person:

    a. three (3) loaded Sig Sauer handgun magazines,

    b. six (6) loaded Assault Rifle magazines,

    c. an M9 bayonet knife,

    d. oleoresin capsicum spray, a/k/a pepper spray,

    e. a pocket knife,

    f. a ski mask and gloves, and

    g. a green flag bearing the words "Irish Republic."

12. KREBS could not produce a conceal carry permit and claimed that his permit was at home. KREBS was arrested by the police for carrying a firearm without a license (18 PA Criminal Code § 6106A2 - Firearms not to be carried without a license).

6. On June 16, 2025, Chester County Detectives obtained a state search warrant for KREBS's residence, located in the Eastern District of Pennsylvania, to search for, among other

things, firearms and weapons. That same day, law enforcement executed the state search warrant at KREBS's residence. During the search, investigators located a device that appeared to be an improvised explosive device ("IED"), specifically a pipe bomb, as depicted below, and a container labeled oxidizer in a desk drawer in the garage attached to KREBS's premises. Based on my training and experience, I know that an oxidizer is a component required to detonate an explosive. The device was a pipe capped at both ends with a circuit board and wires running from the circuit board to the pipe. The investigators also located detailed drawings of grenades and the internal detonators of the grenades and two military style body armor vests with bullet resistant plates in the garage. Based on the presence of the apparent IED, investigators evacuated the premises and requested assistance from the Montgomery County (PA) Bomb Squad. An FBI Special Agent Bomb Technician responded to the scene as well to assist with the safe handling and confiscation of the materials.



7.      Bomb Technicians examined the device depicted above and, using x-ray technology, determined that the device contained nails and screws, which, based on my training and experience, are frequently placed inside IEDs to serve as shrapnel to increase the dangerousness of the device. The Bomb Technician identified a wire running from the electrical

components into the pipe, which would be used to initiate the main charge of the device. The container next to the device contained nails and pellets along with a powder. The Bomb Technician deemed both items as explosive devices and rendered each safe.

8. As the search continued, investigators eventually located a total of 13 devices that the Bomb Technician deemed IEDs as well as other explosive material. Initially, Bomb Technicians conducted a secondary search of the garage and located a box labeled "no touch pls." Using an x-ray, the Bomb Technicians discovered multiple improvised detonators, a mechanical kitchen timer, a 9-volt battery, and a plastic pill bottle, which appeared to contain powder and an attached improvised detonator.

9. After rendering the pill bottle device safe, investigators discovered more devices in another metal box. Bomb Technicians identified the following inside the box: an aluminum beverage can, containing a small amount of powder, with a green hobby fuse leading to a spent shell casing; a glass soda bottle which appeared to contain powder and a green hobby fuse, which an x-ray revealed an improvised shell casing initiator; eleven spent shell casings with hobby fuses, after which an x-ray revealed the casings contained powder; and one $CO_2$ cartridge with a protruding electric match, after which an x-ray revealed powder inside.

10. Based on the discovery of the explosive devices, KREBS was arrested and charged with the 13 counts of possession of a weapon of mass destruction and related charges by the Chester County District Attorney's Office. KREBS was denied bail and his currently detained pending trial.

*The Analysis of the Destructive Devices*

11. After all the IEDs were rendered safe, law enforcement seized all the devices, which were sent to the FBI Explosives and Hazardous Devices Unit at the FBI Laboratory located in Huntsville, Alabama for further analysis and examination.

12. In the opinion of the FBI Explosives and Hazardous Devices Examiner, a preliminary analysis of the submitted specimens revealed the disassembled components of five (5) Improvised Explosive Devices (IEDs), also referred to as homemade bombs. As stated by the Examiner, an IED generally consists of an explosive main charge, an initiation system, and sometimes a container(s) and/or enhancement(s). Properly assembled and initiated IEDs, such as the ones described further below are capable of causing property damage, injuries, and/or death.

13. Two (2) of the five (5) IEDs described in the Examiner's preliminary assessment were noted as having partially constructed initiation systems. An initiation system provides the required energy to cause the energetic material of the IED, also referred to as the explosive main charge, to react. Initiation systems are generally categorized as electric, nonelectric, or a combination of both. An electric initiation system is comprised of a power source(s), conductors, a switch(es), and an initiator(s). An IED that has the functional characteristics and/or design elements of a weapon is technically considered a destructive device. Weapon design elements would include the use of a hardened container, such as metal or glass, or the addition of hardened items (nuts, bolts, metal spheres, glass, rocks, etc.) in an IED's construction. These items would enhance the fragmentation effect created from the explosion of an IED, thus enhancing its lethal capability.

14. The Explosives and Hazardous Devices Examiner's opinion was that the five (5) disassembled IEDs that were examined in his preliminary assessment and examination met the

technical definition of destruction devices. Specifically, four (4) of these IEDs utilized metal containers and one (1) utilized a glass container. The Examiner made the presumption that there was the presence of energetic materials based on the field screenings conducted by the Bomb Technicians and the visual similarities between the powder samples.

15. The first device consisted of the disassembled components of an IED, commonly referred to as a "cricket." This device consisted of an expended carbon dioxide ($CO_2$) cartridge, suspected energetic material, hobby fuse, and an electric match. Hobby fuse is a cord-like item designed to transmit a flame front along its length. An electric match is a type of initiator that produces a spit of flame and sparks when sufficient electrical energy is applied. The hobby fuse and electric match comprised a combination type initiating system (electric and non-electric). At a minimum, the addition of a power source, such as a common household battery, would be required to function this device as designed.

16. The second device consisted of the disassembled components of an IED consisting of a glass "Coca-Cola" bottle, suspected energetic material, and a non-electric initiation system. Tape was present around the opening of the bottle. The initiation system was comprised of a length of hobby fuse with an expended ammunition cartridge casing secured to one end. A suspected energetic material was also present within the cartridge casing.

17. The third device consisted of the disassembled components of an IED consisting of a metal "GUINNESS" beer can, suspected energetic material, and a non-electric initiation system. Tape was present around the top portion of the can. The initiation system was comprised of a length of hobby fuse with an expended ammunition cartridge casing secured to one end. A suspected energetic material was also present within the cartridge casing.

18. The fourth device consisted of the disassembled components of an IED, commonly referred to as a pipe bomb. This device consisted of a metal pipe with two screw-on type end caps, suspected energetic material, and an electric initiation system. The initiation system included a modified mechanical timer, light switch, wires, a 9-volt battery, and a 9-volt battery snap connector. An improvised initiator, constructed from an electric match, expended ammunition casing, and suspected energetic material, was also present.

19. The fifth device also consisted of the disassembled components of an IED, commonly referred to as a pipe bomb. This device consisted of a metal pipe with two screw-on type end caps, suspected energetic material, and a partially constructed electric initiation system. The initiation system included a modified mechanical timer and wires. An improvised initiator, constructed from an electric match, expended ammunition casing, and suspected energetic material, was also present. A power source, such as a common household battery, was not associated with this device.

20. The FBI Explosives and Hazardous Devices Examiner also examined a partially constructed IED device. This device comprised of a metal pipe with two screw-on type end caps, nails, a battery pack, timing circuit, and wires. No suspected energetic material or initiator was associated with this device.

21. I have been informed by members of the Bureau of Alcohol Tobacco and Firearms ("ATF") that a records query shows that aforementioned devices were never registered to KREBS in the National Firearms Registration and Transfer Record.

**CONCLUSION**

22. Based on the foregoing, I respectfully submit that the facts set forth in this affidavit demonstrate that there is probable cause to believe that Kevin Krebs has committed a violation of 26 U.S.C. § 5861(d), (f) and § 5871 (unlawful making and possessing of unregistered destructive devices). I therefore respectfully ask that the Court issue a warrant ordering his arrest for such crime.

Respectfully submitted,

/s/ Robert M. Lythgoe
_____
Robert M. Lythgoe
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 21st day of October, 2025.

Pamela A. Carlos
Digitally signed by Pamela A. Carlos
Date: 2025.10.21 19:14:47 -04'00'
_____
Honorable Pamela A. Carlos
United States Magistrate Judge